UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL A. MAHON, | : |
|     Plaintiff, | : |
| v. | :   Civil Action No.:   15-1227 (RC) |
| | :   Re Document Nos.:   13, 20 |
| ANESTHESIA BUSINESS CONSULTANTS, LLC, | : |
|     Defendant. | : |

**MEMORANDUM OPINION**

GRANTING DEFENDANT'S MOTION TO DISMISS;
DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

**I.  INTRODUCTION**

Bringing claims under the federal Fair Debt Collection Practices Act ("FDCPA") and the District of Columbia debt collection statute, Plaintiff Paul A. Mahon alleges that Defendant Anesthesia Business Consultants, LLC ("ABC") continued to pursue payment of a debt Mr. Mahon had already paid. ABC moves to dismiss Mr. Mahon's claims. ABC argues that it is not a debt collector subject to the FDCPA and that Mr. Mahon's debt did not arise from a consumer credit sale, which is a prerequisite for liability under the District of Columbia debt collection statute. The Court agrees with ABC's FDCPA assertions and will accordingly dismiss Mr. Mahon's federal claims. The Court will dismiss Mr. Mahon's remaining claims without prejudice, because those claims present a novel question of local law over which this Court's exercise of supplemental jurisdiction would be inappropriate. The Court will also deny Mr. Mahon's motion for leave to amend his complaint, because Mr. Mahon's proposed amendment would not save his claims from dismissal.

## II. BACKGROUND[1]

According to the complaint, Plaintiff Paul A. Mahon incurred a $1320.00 medical debt on March 20, 2014, for anesthesia administered to him at Sibley Memorial Hospital in Washington, D.C., by a company named Certified Anesthesia Services. First Am. Compl. ¶ 21, ECF No. 16; *id.* Ex. 1, ECF No. 16-1. "[A]t the time he received the anesthesia services," Mr. Mahon believes that he signed an agreement "acknowledging financial responsibility for the debt in its entirety, authorizing the debt-holder to bill his medical insurance company, and agreeing to pay any amount of the debt not paid by his medical insurance plan." *Id.* ¶ 23.

Afterward, Certified Anesthesia Services "sold, assigned, transferred, or placed" the debt with Defendant Anesthesia Business Consultants, LLC ("ABC") "for the purpose of collecting payment." *Id.* ¶ 24. ABC received a partial payment of $1207.94 from Mr. Mahon's primary medical insurance provider, Cigna, on April 16, 2014. *Id.* ¶ 25. ABC then billed Mr. Mahon for the amount that remained outstanding ($112.06). *Id.* ¶ 26; *id.* Ex. 1 (reproducing ABC's bill).

---

[1] Contemporaneously with his brief opposing ABC's motion to dismiss, Mr. Mahon filed a First Amended Complaint. *See* First Am. Compl., ECF No. 16. *See generally* Mot. Dismiss Pursuant to Rule 12(b)(6), ECF No. 13 [hereinafter Def.'s Mot.]; Pl.'s Resp. Opp'n Def. ABC's Mot. Dismiss Pursuant to Rule 12(b)(6), ECF No. 17 [hereinafter Pl.'s Opp'n].

Because "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)," Fed. R. Civ. P. 15(a), the First Amended Complaint is the operative complaint here. *See* Def.'s Mot. 2 (indicating that ABC served its Rule 12(b) motion on October 13, 2015); First Am. Compl. (showing that Mr. Mahon filed his First Amended Complaint on October 27, 2015, or fourteen days after ABC served its motion to dismiss). The Court therefore cites principally to the First Amended Complaint in this Part and presumes that Mr. Mahon's factual allegations in that complaint are true. *See United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000) ("At the motion to dismiss stage, 'the only relevant factual allegations are the plaintiffs',' and they must be presumed to be true." (quoting *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1506 (D.C. Cir. 1984))).

Although the First Amended Complaint names Suburban Credit Corporation of Virginia, Inc. ("SCC") as an additional defendant, SCC has since settled with Mr. Mahon and is no longer a defendant in this case. *See* Stipulation of Dismissal with Prejudice, ECF No. 27. The Court thus omits discussion of facts and claims relevant to SCC.

ABC's bill asked Mr. Mahon to address his payment check to "Surgical and Anes Assoc." *Id.* Ex. 1. With a check dated May 6, 2014 and made out to "Surgical & Anes Assoc," Mr. Mahon paid the $112.06 in full. *Id.* ¶ 28; *id.* Ex. 3, ECF No. 16-3 (reproducing Mr. Mahon's check). ABC deposited Mr. Mahon's check on May 12, 2014. *Id.* ¶ 28; *id.* Ex. 3.

But even though Mr. Mahon had paid the outstanding balance, ABC sent Mr. Mahon a second bill, for the same $112.06, on July 2, 2014. *Id.* ¶ 29; *id.* Ex. 4 (reproducing the July 2, 2014 bill). Again, ABC's bill asked Mr. Mahon to address his payment check to "Surgical and Anes Assoc." *Id.* Ex. 4, ECF No. 16-4. The bill's sender was likewise labeled as "Surgical and Anes Assoc." *Id.* ¶ 30; *id.* Ex. 4. In addition to the written bill, ABC also called Mr. Mahon four times in July and August 2014 and left voice messages about the asserted debt. *Id.* ¶ 31. Having paid the $112.06 already, Mr. Mahon twice called ABC in July and August 2014 to dispute the debt and to ask ABC to produce records demonstrating an unpaid bill. *Id.* ¶ 32.

ABC never produced any records demonstrating an unpaid bill, and in October 2014 it instead "sold, assigned, transferred, or placed" Mr. Mahon's account with another company for debt collection purposes. *Id.* ¶ 34. Mr. Mahon asserts that ABC did not tell that company that Mr. Mahon had disputed the debt. *Id.* ¶ 35.

Mr. Mahon filed suit in this Court in July 2015. *See* Compl., ECF No. 1. His complaint brings claims for violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and the District of Columbia debt collection statute, D.C. Code § 28-3814. *See* First Am. Compl. ¶¶ 64–76. ABC moves to dismiss Mr. Mahon's claims. *See* Mot. Dismiss Pursuant to Rule 12(b)(6), ECF No. 13. With respect to Mr. Mahon's FDCPA claims, ABC argues that ABC is not a debt collector as defined in the FDCPA, so the Court must dismiss the FDCPA claims because the FDCPA does not apply to ABC. Statement P. & A. Supp.

Mot. Dismiss Pursuant to Rule 12(b)(6), at 3–4 [hereinafter Def.'s Statement]. With respect to Mr. Mahon's District of Columbia statutory claims, ABC argues that Mr. Mahon's debt did not arise from a consumer credit sale, the presence of which is a requirement for his claims' success under the relevant statute, so the Court must also dismiss Mr. Mahon's District of Columbia statutory claims. *Id.* at 4–6.[2]

Unsurprisingly, Mr. Mahon's opposition disagrees with ABC's arguments. *See* Pl.'s Resp. Opp'n Def. ABC's Mot. Dismiss Pursuant to Rule 12(b)(6), at 4–10, ECF No. 17 [hereinafter Pl.'s Opp'n]. But Mr. Mahon also moves to amend his complaint "to more accurately describe the relationship between Defendant ABC and C[ertified] A[nesthesia] S[ervices], the party that originated the debt" and "to more fully lay out its claim against Defendant ABC on that basis." Pl.'s Mot. Leave Amend Compl. Pursuant to Rule 15(a)(2), at 2, ECF No. 20 [hereinafter Pl.'s Mot. Leave]. The Court addresses each pending motion in turn.

### III. ABC'S MOTION TO DISMISS

#### A. Legal Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate

---

[2] ABC's motion to dismiss also argues that the Court must dismiss one of Mr. Mahon's FDCPA claims because Mr. Mahon never disputed his debt in writing. *See* Def.'s Statement 6–7 (arguing for dismissal of Mr. Mahon's claim under 15 U.S.C. § 1692g). Because Mr. Mahon's amended complaint omits that claim, the Court need not discuss the merits of this argument. *Compare* Compl. ¶ 68 (charging ABC with a violation of 15 U.S.C. § 1692g(b)), *with* First Am. Compl. ¶¶ 64–71 (omitting the § 1692g claim against ABC). In any event, as discussed below, all of Mr. Mahon's FDCPA claims must be dismissed because ABC is not a debt collector subject to the FDCPA. *See infra* Part III.B.

likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Brewer v. District of Columbia*, 891 F. Supp. 2d 126, 130 (D.D.C. 2012). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations and footnote omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.[3]

---

[3] In deciding a motion to dismiss under Rule 12(b)(6), a court may not rely on matters outside the pleadings without converting the motion to one for summary judgment, Fed. R. Civ. P. 12(d), though it may consider documents attached to the complaint as exhibits, documents incorporated by reference, and matters on which the court may take judicial notice, *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## B. Fair Debt Collection Practices Act Claims

The federal Fair Debt Collection Practices Act ("FDCPA") aims "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). *See generally* Fair Debt Collection Practices Act, Pub. L. No. 95-109, 91 Stat. 874 (1977) (codified as amended at 15 U.S.C. §§ 1692–1692p). Its provisions govern debt collectors' acquisition of location information, debt-related communications and representations, debt-related conduct, and debt validation. *See* 15 U.S.C. §§ 1692b–1692g. The FDCPA also makes debt collectors who violate its provisions civilly liable for actual damages, statutory damages, and attorney's fees and costs. *See id.* § 1692k(a).

But the FDCPA's reach is limited. Its substantive provisions apply only to "debt collectors," as defined under the statute. *See id.* § 1692a(6) (defining "debt collector" for FDCPA purposes); *see, e.g., id.* § 1692e ("A *debt collector* may not use any false, deceptive or

---

ABC has attached an internet page to its reply in support of its motion. *See* Reply Mem. Pl.'s Resp. Opp'n Def.'s Mot. Dismiss Ex. A, ECF No. 18-1; *see also* Def.'s Statement 1 (referring to ABC's "Exhibit A," and asserting that Exhibit A reproduces the homepage of a private physician practice group called "Surgical Anesthesia Associates, PLLC"); Reply Mem. Pl.'s Resp. Opp'n Def.'s Mot. Dismiss 4 n.2, ECF No. 18 (explaining that, because ABC neglected to attach its Exhibit A to its motion to dismiss, ABC attached Exhibit A to its reply). [hereinafter Def.'s Reply]. Although internet pages may be judicially noticeable, *see, e.g., Spy Optic, Inc. v. Alibaba.Com, Inc.*, No. 15-0659, 2015 WL 7303763, at *4 (C.D. Cal. Sept. 28, 2015), the Court declines to take judicial notice of ABC's Exhibit A. Because ABC belatedly produced Exhibit A in its reply, instead of in its motion to dismiss, Mr. Mahon never received an opportunity to respond to Exhibit A in his opposition brief. *See generally* Fed. R. Evid. R. 201(e) (explaining that, in general, "a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed"). The Court accordingly will not consider Exhibit A in its analysis of ABC's motion to dismiss.

The Court also does not rely on the billing service agreement ABC produced in its opposition to Mr. Mahon's motion for leave to file a second amended complaint. *See* Obj. Pl.'s Mot. Leave Amend Compl. Pursuant to Rule 15(a)(2), Ex. A, ECF No. 21-1.

misleading representation . . . ." (emphasis added)); *id.* § 1692g(b) "If the consumer notifies the debt collector in writing . . . that the debt . . . is disputed . . . , the *debt collector* shall cease collection of the debt . . . until the debt collector obtains verification of the debt . . . ." (emphasis added)). To fall within the act's prescriptions, therefore, an entity must meet the criteria identified in the FDCPA's "long and somewhat convoluted definition of the term 'debt collector.'" *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996).

The FDCPA initially defines "debt collector" to include "any person who uses . . . interstate commerce or the mails in . . . the collection of any debts" and "any person . . . who regularly . . . attempts to collect . . . debts owed or due . . . another." 15 U.S.C. § 1692a(6). Working from this presumptive definition, the FDCPA both adds to and subtracts from it.

First, the FDCPA adds to the set of "debt collectors" covered by declaring that "the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting . . . such debts." *Id.* This "so-called false name exception" is "a departure from the general rule that creditors are not subject to the FDCPA." *Vincent v. Money Store*, 736 F.3d 88, 97 (2d Cir. 2013).

Second, the FDCPA subtracts from its initial "debt collector" definition by excluding six categories of possible "debt collectors." *See* 15 U.S.C. § 1692a(6)(A)–(F). The one relevant here—the sixth category—declares that "debt collector" does not include, among other persons, "any person collecting . . . any debt . . . asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person . . . ." *Id.* § 1692a(6)(F)(iii). In other words, if the alleged debt collector "was handling the [debt] before it went into default, it is not a debt collector" under the FDCPA. *Parker v. BAC Home Loans Servicing LP*, 831 F. Supp. 2d 88, 93 (D.D.C. 2011); *accord Wadlington*, 76 F.3d at

107 (holding that the defendant was a creditor, not a debt collector, under the FDCPA, because "the debts in question . . . were not 'in default'" when the defendant received them); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("[A] debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.").

Here, ABC falls squarely within the sixth category of possible "debt collectors" excluded from the "debt collector" definition, because it began handling Mr. Mahon's medical debt when it was not in default. "[T]he FDCPA does not define so key a term as 'default[,]'" *Alibrandi v. Fin. Outsourcing Servs.*, 333 F.3d 82, 86 (2d Cir. 2003), so courts must typically "look to any underlying contracts and applicable law governing the debt at issue" to decide whether a debt is in default, *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1074 (9th Cir. 2011). Federal regulations, for instance, "have defined default as commencing anywhere between 30 and 270 days after a debt becomes due." *Alibrandi*, 333 F.3d at 87 (noting, for various kinds of debts, pre-default periods of 30, 90, 180, and 270 days set by federal regulation).

But even without clear guidance about what a debt "in default" is under the FDCPA, it is clear what a debt "in default" is not: a debt that has just become due. "[C]ourts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default." *Id.* at 86 (footnote omitted) (citing *Skerry v. Mass. Higher Educ. Assistance Corp.*, 73 F. Supp. 2d 47, 51 (D. Mass. 1999); *Jones v. Intuition, Inc.*, 12 F. Supp. 2d 775, 779 (W.D. Tenn. 1998)). The Second Circuit has expressly rejected "the proposition that default occurs *immediately* after a debt becomes due." *Id.* at 87. In justifying that rejection, the Second Circuit noted that, if default occurs immediately after payment becomes due, then payments' due dates would "immediately expos[e]

debtors to the sort of adverse measures, such as acceleration, repossession, increased interest rates, and negative reports to credit bureaus, from which the Act intended to afford debtors a measure of protection." *Id.*

Thus, if ABC began handling Mr. Mahon's medical debt before it became due, then ABC must have obtained the debt when the debt was not in default. The exhibit Mr. Mahon attached to his complaint shows that this was the case: in the bill Mr. Mahon first received from ABC, ABC did not include any language stating that Mr. Mahon's debt was in default; ABC simply stated that "[b]ills are due and payable when rendered." *See* First Am. Compl. ¶ 26; *id.* Ex. 1, at 2. And Mr. Mahon's complaint does not allege that his debt was in default. *See id.* ¶¶ 21–26. Instead, it establishes a concise timeline, in which (1) Mr. Mahon received services on March 20, 2014; (2) the service provider "sold, assigned, transferred, or placed" his account with ABC for payment collection; (3) ABC billed Mr. Mahon for his debt; (4) Mr. Mahon mailed his payment to ABC on May 6, 2014; and (5) ABC deposited the check on May 12, 2014. *Id.* ¶¶ 21–28. Under this timeline, ABC must have begun handling Mr. Mahon's debt before the issuance of his very first bill, which was sometime before May 6, 2014—in other words, before the debt became due. Because ABC was therefore "collecting . . . a debt which was not in default at the time it was obtained" by ABC, the FDCPA expressly excludes ABC from the set of "debt collectors" governed by the FDCPA's provisions. 15 U.S.C. § 1692a(6)(F).

Mr. Mahon does not attempt to rebut this argument. *See* Pl.'s Opp'n 4–6. Instead, he argues that "ABC is a 'debt collector' under the FDCPA because it used a false name[,] 'Surgical and Anes Assoc,' in the process of collecting its debts." *Id.* at 4. In this manner, Mr. Mahon implicitly concedes that ABC is a "creditor," not a "debt collector"—but he argues that ABC is a creditor subject to the "false name exception," through which the FDCPA extends the scope of

its application to a creditor "who, in the process of collecting [its] own debts, uses any name other than [its] own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6); *see* Pl.'s Opp'n 4–6.

Mr. Mahon has not, however, alleged facts that show that ABC satisfies each statutory element required for the false name exception to apply. "The text of the exception . . . sets forth three elements that must be satisfied before deeming a creditor a debt collector pursuant to the false name exception: (1) the creditor is collecting its own debts; (2) the creditor 'uses' a name other than its own; and (3) the creditor's use of that name falsely indicates that a third person is 'collecting or attempting to collect' the debts that the creditor is collecting." *Vincent v. Money Store*, 736 F.3d 88, 98 (2d Cir. 2013); *see* 15 U.S.C. § 1692a(6). Although, as characterized in Mr. Mahon's complaint, ABC satisfies the first two elements, the third statutory element is missing here. The Court addresses each element in turn.

With respect to the first element, ABC is indeed a creditor collecting its own debts. As discussed above, ABC is not a "debt collector" under the FDCPA. ABC is therefore a creditor under the FDCPA. *See Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) (explaining that "an entity that did not originate the debt in question but acquired it and attempts to collect on it . . . is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired").

Although ABC contends that the "either a creditor, or else a debt collector" dichotomy for companies like itself is a "false syllogism," Reply Mem. Pl.'s Resp. Opp'n Def.'s Mot. Dismiss 2, ECF No. 18 [hereinafter Def.'s Reply], an entity that acquires a debt and seeks to collect it cannot be neither a creditor nor a debt collector. *Bridge*, 681 F.3d at 359. "To allow such an entity to define itself out of either category would mean that the intended protection of

the FDCPA is unavailable." *Id.* Thus, for instance, "a loan servicer . . . can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred." *Id.* (citing *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106–08 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)). Put another way,

> [i]f the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector. To distinguish between these two possibilities, the Act uses the status of the debt at the time of the assignment[.] . . . [T]he Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not.

*Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003); *accord FTC v. Check Inv'rs, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007).

The dichotomy between debt collectors and creditors delineates who qualifies as an FDCPA "creditor" in general, as well as who qualifies as a "creditor" under the false name exception to the FDCPA's "debt collector" definition:

> The same [principle] is true of a creditor who uses any name other than his own which would indicate that a third person is attempting to collect the debt. No such creditor may escape liability by alleging that it is neither a creditor nor a debt collector and thus not subject to the FDCPA.

*Bridge*, 681 F.3d at 360 (citation omitted).

Here, as discussed above, ABC cannot be a "debt collector" under the FDCPA because it obtained Mr. Mahon's medical debt when that debt was not in default. Instead, ABC was "acting much like the original creditor that created the debt," *Schlosser*, 323 F.3d at 536.[4] Under the false

---

[4] Hence, ABC incorrectly argues that it was "not a creditor collecting its own debts because it is actually a billing service company that issued an invoice for a non-defaulted debt." Def.'s Reply 2.

name exception, therefore, if ABC used a name other than its own "which would indicate that a third person [was] . . . attempting to collect the debt," then ABC could still be subject to the FDCPA, even though it was not acting as a "debt collector." *See* 15 U.S.C. § 1692a(6).

Having decided that ABC is a "creditor collecting its own debts" and thus satisfies the first element required to invoke the FDCPA's false name exception, the Court now turns to the second and third elements: (2) whether "the creditor 'uses' a name other than its own," and (3) whether "the creditor's use of that name falsely indicates that a third person is 'collecting or attempting to collect' the debts that the creditor is collecting." *Vincent v. Money Store*, 736 F.3d 88, 98 (2d Cir. 2013).

With respect to the second element, the complaint alleges that ABC used a name other than its own—"Surgical and Anes Assoc"—in the process of collecting the balance of Mr. Mahon's medical debt. *See* First Am. Compl. ¶¶ 26, 29–30; *id.* Exs. 1, 4, ECF Nos. 16-1, 16-4. ABC does not dispute that its use of that name satisfies the second element of the false-name-exception analysis. *See* Def.'s Reply 2–6.

With respect to the third element, however, even though ABC was a creditor collecting its own debts and using a name other than its own, the facts in Mr. Mahon's complaint do not show that ABC was using an alternative name that "would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). This missing element is fatal to Mr. Mahon's FDCPA claims.

To avoid FDCPA coverage under the false name exception, a creditor "should use 'the name under which it usually transacts business, or a commonly-used acronym,' or any name that it has used from the inception of the credit relation." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) (citations omitted) (quoting Federal Trade Commission Staff

12

Commentary on the FDCPA, 53 Fed. Reg. 50,097, 50,107 (Dec. 13, 1988)). The creditor "need not use its full business name or its name of incorporation." *Id.*; *accord Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 739 (7th Cir. 2004); *Rollo v. Chase Home Fin. LLC*, No. 12-2914, 2013 WL 1390676, at *4 (S.D. Tex. Apr. 4, 2013); *Dickenson v. Townside T.V. & Appliance*, 770 F. Supp. 1122, 1128 (S.D. W. Va. 1990). Because the purpose of the false name exception is "to keep the debtor from being deceived into believing some third party other than the creditor with whom [he] has been dealing has been enlisted to collect the debt," *Leggett v. Louis Capra & Assocs., LLC*, No. 13-5847, 2015 WL 1608662, at *10 (N.D. Ill. Apr. 10, 2015), "[d]efendants may use assumed names for debt collection, so long as defendants are consistent in using the assumed name to avoid consumer confusion," *Everst v. Credit Prot. Ass'n, L.P.*, No. 01-7025, 2003 WL 22048719, at *4 (N.D. Ill. Aug. 25, 2003). *Accord Leasure v. Willmark Cmtys., Inc.*, No. 11-0443, 2013 WL 6097944, at *3 (S.D. Cal. Mar. 14, 2013); *Wolfe v. Bank One Corp.*, 433 F. Supp. 2d 845, 847–48 (N.D. Ohio 2005). To determine whether a debtor would be deceived, the Court must evaluate "whether the 'least sophisticated consumer' would be deceived by the collection practice." *Maguire*, 147 F.3d at 236; *accord Nrivnak v. NCO Portfolio Mgmt.*, 994 F. Supp. 2d 889, 900 (N.D. Ohio 2014).

      Here, when ABC began its credit relationship with Mr. Mahon, it used the name "Surgical and Anes Assoc" to bill him for the $112.06 debt. *See* First Am. Compl. ¶ 26; *id.* Ex. 1 (directing Mr. Mahon to address his payment to "Surgical and Anes Assoc"). When ABC sent Mr. Mahon a second bill, ABC continued to use the name "Surgical and Anes Assoc." *Id.* ¶¶ 29–30; *id.* Ex. 4 (also designating "Surgical and Anes Assoc" as the payee). And in the later telephone calls between ABC and Mr. Mahon, Mr. Mahon does not allege that ABC inconsistently used its assumed name. *See id.* ¶¶ 31–32.

Indeed, "Anesthesia Business Associates, LLC" never appears on the complaint's reproductions of ABC's bills. *See id.* Exs. 1, 4. Nor does Mr. Mahon allege that he was ever confused by ABC's use of the name "Surgical and Anes Assoc." *See id.* ¶¶ 25–33; Pl.'s Opp'n 4–6. *See generally Franceschi v. Mautner–Glick Corp.*, 22 F. Supp. 2d 250, 255 (S.D.N.Y. 1998) (noting that the plaintiff did not "even allege that he suffered confusion" about the relationship between the alleged debt collector and the creditor, and finding the false name exception inapplicable). On these facts, ABC consistently used the name "Surgical and Anes Assoc" throughout its dealings with Mr. Mahon.

"Surgical and Anes Assoc" was thus "the only party of whom [Mr. Mahon] was aware and was the entity to which he believed he owed the debt." *Gutierrez*, 382 F.3d at 739 (holding, in a case with similar facts, that the defendant did not fall under the false name exception's ambit). Even the "least sophisticated consumer" would not think that "some third party" other than the creditor (which, to Mr. Mahon, had always been "Surgical and Anes Assoc") was enlisted to collect the debt. *Leggett*, 2015 WL 1608662, at *10. In fact, it "would have created more confusion" if ABC "started listing itself . . . as [Mr. Mahon's] creditor instead of the name in which all other business had been transacted." *Gutierrez*, 382 F.3d at 739.[5]

---

[5] ABC's bills also lack any reference to "Certified Anesthesia Associates," which, according to Mr. Mahon's complaint, originated his medical debt. *See* First Am. Compl. ¶ 21; *id.* Exs. 1, 4. Thus, as with ABC and "Surgical and Anes Assoc," the least sophisticated consumer would not have suffered confusion about the relationship between Certified Anesthesia Associates and ABC (or "Surgical and Anes Assoc," the name by which ABC was known to Mr. Mahon). When a complaint "alleges that [the plaintiff] *simply didn't know* the entity to which he incurred the debt, because its name was undisclosed . . . , and then a bill was later received from, and harassing calls were made by, [the defendant]," the plaintiff fails to state a claim under the FDCPA. *A.W. v. Preferred Platinum Plan, Inc.*, 923 F. Supp. 2d 1168, 1172 (D. Minn. 2013).

Because ABC always corresponded with Mr. Mahon using the "name that it has used from the inception of the credit relation," the false name exception does not apply to ABC. *Maguire v. Citicorp Retail Servs.*, 147 F.3d 232, 235 (2d Cir. 1998). ABC thus is not a "debt collector" under the FDCPA for two reasons: (1) it obtained Mr. Mahon's debt when it was not in default, and (2) it is not a creditor "who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). Because Mr. Mahon's FDCPA claims against ABC can only proceed against a "debt collector," they must be dismissed. *See id.* § 1692e ("A *debt collector* may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." (emphasis added)); First Am. Compl. ¶¶ 66, 67, 69 (asserting FDCPA claims against ABC under § 1692e).

### C. Claims Under the District of Columbia Debt Collection Statute

The Court now turns to Mr. Mahon's claims under the District of Columbia debt collection statute, D.C. Code § 28-3814. Mr. Mahon asserts that this Court has jurisdiction over these claims under the federal supplemental jurisdiction statute, 28 U.S.C. § 1367. First Am. Compl. ¶ 3. Mr. Mahon does not assert that this Court has diversity jurisdiction over these claims under 28 U.S.C. § 1332. First Am. Compl. ¶¶ 3–6. Nor does it appear that the amount these claims put in controversy exceeds $75,000, the amount in controversy which § 1332 requires to establish diversity jurisdiction. *See* 28 U.S.C. § 1332(a); First Am. Compl. 11 (asserting, under District of Columbia statutes, statutory damages in the amount of $100.00, as well as actual damages, punitive damages, and reasonable attorney's fees, but without specifying whether the amount in controversy exceeds $75,000). Supplemental jurisdiction under § 1367 thus provides the sole source of federal jurisdiction over Mr. Mahon's District of Columbia statutory claims.

The Court has discretion to decline to exercise that jurisdiction. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the claim raises a novel or complex issue of State law, . . . [or] the district court has dismissed all claims over which it has original jurisdiction . . . .").

Having determined that Mr. Mahon's federal claims must be dismissed, the Court declines to exercise supplemental jurisdiction over the remaining District of Columbia statutory claims. *See Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 (D.C. Cir. 2005) ("[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." (alteration in original) (internal quotation marks omitted)). And supplemental jurisdiction is doubly inappropriate here, given how few cases interpret the term "payable in installments" in D.C. Code § 28-3802(2), an issue on which the parties focus their briefing. *See* Def.'s Statement 5–6 (arguing that Mr. Mahon's medical debt cannot be a "consumer credit sale" covered by D.C. Code § 28-3814 because it was not "payable in installments"); Pl.'s Opp'n 6–9 & n.3; Def.'s Reply 6–7. The Court is aware of just two opinions from the District of Columbia Court of Appeals bearing on this issue, and even those opinions reach the issue only in dicta. *See Wetzel v. Capital City Real Estate, LLC*, 73 A.3d 1000, 1003 n.3 (D.C. 2013); *Sterling Mirror of Md., Inc. v. Gordon*, 619 A.2d 64, 67 (D.C. 1993). Because Mr. Mahon's District of Columbia statutory claims present a novel question of local law, the Court declines to exercise supplemental jurisdiction over these claims and will dismiss them without prejudice so that Mr. Mahon, if he chooses, can bring them before a District of Columbia court for adjudication on the merits. *See generally* 28 U.S.C. § 1367(c)(1); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)

16

("When . . . the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." (footnote omitted)).

## IV.  MR. MAHON'S MOTION FOR LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a)(1), a party may amend his pleading once as matter of course within twenty-one days after serving it, or twenty-one days after service of a responsive pleading under Rule 12(b), (e) or (f). *See* Fed. R. Civ. P. 15(a)(1). Mr. Mahon has already exercised this right. *See* First Am. Compl. After a party has already amended his pleading once as a matter of course, he "may amend [his] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Hoping to amend his complaint once more, and not having obtained ABC's written consent, Mr. Mahon now seeks the Court's leave to do so. *See* Pl.'s Mot. Leave.

Typically, leave to amend a complaint should be freely given "when justice so requires." Fed R. Civ. P. 15(a)(2). In deciding whether to allow a party to amend a complaint, however, courts may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 344 (D.C. Cir. 1997) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "An amendment would be futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002).

Here, Mr. Mahon's proposed second amended complaint falls into the last category of futile amendments: it cannot withstand a motion to dismiss, for the same reasons as those dooming his first amended complaint. As discussed above, the FDCPA claims in Mr. Mahon's first amended complaint must be dismissed because ABC is not a "debt collector" under the FDCPA. *See supra* Part III.B. The Court's conclusion relied on two key facts: (1) ABC obtained Mr. Mahon's debt when it was not in default, which means ABC is a creditor under the FDCPA, and (2) ABC consistently used the name "Surgical and Anes Assoc" to correspond with Mr. Mahon, which means ABC does not fall within the false name exception in the FDCPA definition of "debt collector." *See id.* Because Mr. Mahon's proposed second amended complaint does not alter either of these facts, it, just like the first amended complaint, does not state a claim under the FDCPA. *See* Pl.'s Mot. Leave Ex. 1, ¶¶ 22–30, ECF No. 20-1 (showing Mr. Mahon's proposed second amended complaint, which again indicates that ABC obtained Mr. Mahon's debt before Mr. Mahon had ever received a bill for that debt); *id.* ¶¶ 28–33 (indicating that ABC consistently used the name "Surgical and Anes Assoc" throughout its communications with Mr. Mahon). Faced with ABC's motion to dismiss, Mr. Mahon's amended FDCPA claims, just like his current FDCPA claims, would be dismissed.

For the same reasons, Mr. Mahon's proposed second amended complaint cannot save Mr. Mahon's District of Columbia statutory claims from dismissal either. The proposed complaint does not change Mr. Mahon's legal theory under District of Columbia law—namely, that ABC's efforts to collect Mr. Mahon's medical debt are actionable under the debt collection statute, D.C. Code § 28-3814, because the debt arose from a "consumer credit sale" that was "payable in installments." *See* Pl.'s Mot. Leave 3–4 (alleging no change in Mr. Mahon's theory of his case); *id.* Ex. 1, ¶¶ 22–30 (same). As discussed before, this argument presents a novel

question of local law, which means that supplemental jurisdiction would be inappropriate if the Court has already dismissed accompanying federal law claims. *See supra* Part III.C (discussing supplemental jurisdiction). Faced with ABC's motion to dismiss, the proposed second amended complaint's claims under the District of Columbia debt collection statute, just like the first amended complaint's claims under that statute, would be dismissed without prejudice. *See id.*

Neither the FDCPA nor the District of Columbia statutory claims in Mr. Mahon's proposed second amended complaint could withstand ABC's motion to dismiss. Because his amended complaint would be futile, the Court will deny Mr. Mahon's motion for leave to file it. *See Harris*, 126 F.3d at 344 (noting the futility of a proposed amended pleading as a reason to deny leave to amend it); *Robinson*, 211 F. Supp. 2d at 114 ("An amendment would be futile if it . . . could not withstand a motion to dismiss.").

## V.  CONCLUSION

For the reasons set forth above, ABC's motion to dismiss (ECF No. 13) is **GRANTED**, and Mr. Mahon's motion for leave to file a second amended complaint (ECF No. 20) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  April 13, 2016                                                               RUDOLPH CONTRERAS
                                                                                                          United States District Judge